# Case No. 12,519.

## In re SCOTT et al.

[15 N. B. R. 73; [1] 4 Cent. Law J. 29.]

District Court, E. D. Missouri. Dec., 1876.

BANKRUPTCY—COMPOSITION MEETING—WHO MAY VOTE—OBJECTIONS TO RESOLUTION—BEST INTEREST OF ALL—ATTORNEY FOR CREDITOR.

1. A creditor who has an attachment issued within four months before the commencement of proceedings in bankruptcy cannot vote at a composition meeting.

[Cited in Re Shields, Case No. 12,784.]

2. An order referring a proposition of compromise to a register should require him to report whether the resolution of composition is duly passed at the first meeting, whether it has been confirmed by the required signatures, and whether the terms of the composition are for the best interests of all concerned.

[Cited in Litchfield v. Johnson, Case No. 8,-387; Re Jacobs, Id. 7,159.]

3. No second meeting of creditors, as such, is necessary to be held to confirm the resolution of composition.

4. At the hearing for the ratification of the resolution, objections can be presented as to the due passing of the resolution, as to the confirmatory signatures, and as to what is for the best interest of all concerned.

[Cited in Farwell v. Raddin, 129 Mass. 8.]

5. None but unsecured creditors can object to the ratification of a resolution.

6. A resolution cannot be defeated on the mere ground that by the defeat some peculiar benefit may accrue to the objecting creditor.

7. The debtor is not required to appear at the hearing for a ratification, or submit any statements.

8. The statute does not contemplate that the confirmatory signatures must necessarily be attached at the first meeting.

9. The confirmatory signatures must be attached at or before the hearing for a ratification.

[Cited in Home Nat. Bank v. Carpenter, 129 Mass. 4.]

10. The meeting for the purpose of adding to or varying the original proposition is one to follow the confirmation and recording thereof.

11. An advance in the percentage is demonstrative of the fact that the original proposition is not for the best interest of all concerned.

12. Creditors must prove their claims in order to vote on a resolution of composition.

13. In involuntary proceedings the petitioning creditors on whose motion an order to show cause has been issued need not prove their debts anew.

14. The register is an officer of the court, and must take judicial notice of its judgments and decrees.

15. When an attorney at law appears before a register to represent a person, he is to be accepted as such attorney unless some one puts him to proof, by a rule therefor, to show his authority.

16. If a person who is not an attorney at law desires to represent another before a register, he must show a formal power of attorney.

17. If a telegram is produced revoking a power of attorney, the register, if the facts justify it, may in his discretion suspend action until proof of the revocation and new appointment can be presented to him.

18. If there is a concealment of assets or a failure to name all of the creditors, this does not necessarily render the proceedings void, but the question is for the determination of the court.

[19. Cited in Sage v. Heller, 124 Mass. 214, to the point that, when no adjudication or assignment is made, a composition under the statute does not dissolve an attachment or affect the rights of the attaching creditor, who took no part in those proceedings.]

[In the matter of Scott, Collins & Co., bankrupts.]

TREAT, District Judge. This is a proceeding by creditors to have the debtors adjudicated bankrupts. The original petition, with accompanying papers, was filed July 22, 1876. Thereupon, under an order to show cause, the debtors, on August 9, 1876, filed their answer, and demanded a jury. On September 5th they filed a petition for composition, a meeting to consider which was ordered for September 18th. The history of what ensued is set out in the report of the register, to understand which many supplementary facts and proceedings must be considered.

At the first meeting held for composition certain attaching creditors appeared and claimed the right to participate therein, which claim was denied—and rightfully. See section 17 of act of 1874 [18 Stat. 182]. These attaching creditors, unless an adjudication were had, would retain their lien as security; and, therefore, within the terms of the act might, or might not, be secured creditors, dependent on the fact whether an adjudication of bankruptcy should be had. The act contemplates that secured creditors shall not have a vote at said composition meeting unless they first relinquish their security. True, the act, in terms, refers to creditors fully secured; but that must be held to have reference solely to the value of the security compared with the amount of the debt. Hence, if the attaching creditors desired to participate in said meeting, they should have released their attachments. It seems they pre-

---

[1] [Reprinted from 15 N. B. R. 73, by permission.]

ferred, inasmuch as no adjudication was had, to hold their attachments; so that, if the composition were effected, they could obtain their demands in full; yet it was obvious that the debtors, who had interposed a denial of bankruptcy, could, at any moment, by consenting to the adjudication, cause the attachments and the supposed security based thereon to disappear. Thus the attaching creditors were, in a certain sense, subject to the will of the debtors. The latter denied bankruptcy, and if no adjudication followed, the attaching creditors were secured, and consequently could not be heard at the composition meeting. If the composition were effected, in that condition of affairs, without adjudication, the attaching creditors would not be disturbed in their secured demands. Still, the debtors had it in their power to cause that security, by attachment, to disappear at any instant, by consenting to adjudication. The way out of that difficulty was for the creditors to release their attachments, or for the debtors to permit adjudication to' be made. No such action having been had, the first composition meeting was held and the resolution duly passed; the votes of the attaching creditors having been rightfully excluded.

The second meeting, or hearing, was then ordered, at which the attaching creditors again appeared and insisted upon entering into a protracted examination, not of the bankrupts alone, but of an indefinite number of witnesses. Application having been made to the court to determine what was the lawful course to be pursued under the then state of facts, it was held, substantially, that the attaching creditors could not, nor could the debtors, play "fast and loose;" that if the attaching creditors wished to intervene, they must assume the position of unsecured creditors; and, on the other hand, if the debtors wished to contest the allegations of bankruptcy, in good faith, whereby the attaching creditors were secured if no adjudication followed, they ought, in some way, so to appear of record. It was obvious that the respective parties were standing at bay—each holding the other at arm's length—to the great injury of all others in interest, and involving an indefinite delay in the proceedings, with accumulating costs. Hence, on application to the court, it was ruled that the proceedings for the hearing should not be delayed or interrupted by the attaching creditors, unless they first released their supposed securities; nor should they or other creditors protract the investigation unnecessarily. That ruling may have been improvident from a failure to scrutinize with due accuracy the precise condition of the case as then pending. It was supposed by the court that the order of reference to the register required him to report not only whether the resolution for composition had been duly passed at the first meeting, but, also, whether it had been confirmed by the required signatures, and whether the

terms of the composition were for the best interest of all concerned. It seems that the order did not include either of the latter questions, as it should have done. Hence, much of the confusion and difficulty, entailing upon the register and others a large measure of embarrassment.

Before proceeding to consider in detail any of the many exceptions to the register's report, it is necessary to interpret carefully the provisions of the statute under which these proceedings for composition have been had. The United States act, as to composition (1874), is, to a large extent, borrowed from the English act of 1868. The changes made must be carefully noted, in order to ascertain what congress designed should be the proper course of proceedings in this country. It is well known, and was so pronounced by Justice Miller on this circuit, that the act of 1874 was designed to mitigate, in favor of the debtor, the rigors of the act of 1867 [14 Stat. 517]. One of the most important amendments, by the act of 1874, related to involuntary bankruptcy, whereby it was no longer left in the power of one creditor, regardless of the wishes of all others, to force a debtor into bankruptcy. The amendatory act of 1874 required one-fourth in number of the creditors, whose demands were equal, in the aggregate, to one-third of the provable debts, to join, in order to commence involuntary proceedings. The act of 1874 permits a discharge of a voluntary bankrupt whose assets equal thirty per cent. of his debts proved, or who procures the assent of at least one-fourth of his creditors in number and one-third in value. That act, therefore, had a plain and evident intent, viz.: to put proceedings in voluntary and involuntary bankruptcy on exactly the same footing so far as the action of creditors was needed; for precisely the same requirements for a discharge in voluntary cases are exacted as for involuntary proceedings—discharges, under the latter, following, as a matter of course, so far as dependent on the assent of creditors. Thus, if the required number to force a debtor into bankruptcy choose so to do, they thus act with full knowledge that the debtor's discharge will follow irrespective of the percentage realized from his estate. The law was thus made simple and uniform. In voluntary cases the required number assent to the discharge at the close of proceedings, and in involuntary the same number, by instituting the proceedings, assent in advance. So, when the provisions as to composition are considered, we find the same design to favor the unfortunate debtor. Previously, compositions had (to be effective) to have the assent, as a general rule, of all the creditors—a rule which put it in the power of one creditor, as in the cases of involuntary bankruptcy, to thwart the wishes and interests of all other creditors and of the debtor. As to composition, however, a larger number is required than to effect involuntary bank-

ruptcy, to wit: a majority in number, and three-fourths in value of the creditors assembled, to be confirmed by the signatures of two-thirds in number and one-half in value of all the creditors. This provision as to composition proceedings, furnished a large measure of relief to the debtor and assenting creditors. It is in view of the purpose of this congressional legislation that the act of 1874 should be interpreted, viz.: that it is no longer left in the power of one creditor to force a debtor into bankruptcy, or to defeat a composition, against the wishes of all other creditors and of debtors. With these considerations in mind, it is necessary to look to the provisions of the British statute of 1868, and of the United States statute of 1874, to ascertain what congress designed should, as to composition proceedings, be the mode of action, and the rules to be observed.

A reproduction of the respective statutes, in hæc verba, in parallel columns, will show wherein congress changed the borrowed British statute; and in the light of the liberal purpose above suggested, what congress intended should be the rule in this country. It must be noted that the British act contemplates composition proceedings without first commencing an action in bankruptcy, while the United States act contemplates that composition proceedings shall follow a bankruptcy suit commenced.

| UNITED STATES. | BRITISH. |
| --- | --- |
| "That in all cases in bankruptcy now pending, or to be hereafter pending, by or against any person, whether an adjudication in bankruptcy shall have been had or not, the creditors of such alleged bankrupt may, at a meeting called under the direction of the court, and upon not less than ten days' notice to each known creditor of the time, place, and purpose of such meeting, such notice to be personal or otherwise, as the court may direct, resolve that a composition, proposed by the debtor, shall be accepted in satisfaction of the debts due to them from the debtor." | "The creditors of a debtor unable to pay his debts may, by an extraordinary resolution, resolve that a composition shall be accepted in satisfaction of the debts due to them from the debtor." |
| "And such resolution shall, to be operative, have been passed by a *majority in number and three-fourths in value* of the creditors of the debtor, assembled at such meeting either in person OR BY P OXY, and shall be *confirmed by the signature thereto of the debtor and two-thirds in number and one-half in value of all the creditors of the debtor.*" | "An extraordinary resolution of creditors shall be a resolution which has been passed by a *majority in number and three-fourths in value* of the creditors of the debtor, assembled at a general meeting to be held in the manner prescribed, of which notice has been given in the prescribed manner, and has been *confirmed by a majority in number and value of the creditors assembled at a subsequent general meeting,* of which notice has been given in the prescribed manner, and held at an interval of not less than SEVEN days nor more than FOURTEEN days from the date of the meeting at which such resolution was first passed." |
| "And in calculating a majority for the purposes of a composition under this section, creditors whose debts amount to sums not exceeding *fifty dollars, shall be reckoned in the majority in value, but not on the majority in number;* and the value of the debts of secured creditors above the amount of such security to be determined by the court, shall, as nearly as circumstances admit, be estimated in the same way." | "In calculating a majority for the purposes of a composition under this section, creditors whose debts amount to sums not exceeding *ten pounds shall be reckoned in the majority in value, but not in the majority in number,* and the value of the debts of secured creditors shall, as nearly as circumstances admit, be estimated in the same way, and the same description of creditors shall be entitled to vote at such general MEETINGS as in bankruptcy." |
| "And creditors whose debts are fully secured shall not be entitled to vote upon or to sign such resolution without first relinquishing such security for the benefit of the estate." | (No similar provision.) |
| "The debtor, unless prevented by sickness, or other cause satisfactory to such meeting, shall be present at the same, and shall answer any inquiries made of him; and he, or, if he is so prevented from being at such meeting, some one in his behalf, shall produce to the meeting a statement showing the whole of his assets and debts, and the names and addresses of the creditors to whom such debts respectively are due." | "The debtor, unless prevented by sickness or other cause satisfactory to such meetings, shall be present at *both the meetings* at which the extraordinary resolution is passed, and shall answer any inquiries made of him, and he, or if he is so prevented from being at such MEETINGS, some one on his behalf, shall produce to the *meetings* a statement showing the whole of his assets and debts and the names and addresses of the creditors to whom such debts respectively are due." |
| "Such resolution, together with the statement of the debtor as to his assets and debts, shall be presented to the court; and the court shall, *upon notice to all the creditors of the debtor of not less than five days, and upon hearing, inquire whether* such resolution has been passed in the manner directed by this section; and if satisfied that it has been so passed, it shall, subject to the provisions hereinafter contained, and upon being satisfied that the same is for the best interest of all concerned, cause such resolution to be recorded and statement of assets and debts to be filed; and until such record and filing shall have taken place, such resolution shall be of no validity. And any creditor of the debtor may inspect such record and statement at all reasonable times." | "The extraordinary resolution, together with the statement of the debtor as to his assets and debts, shall be presented to the registrar, and it shall be his duty to inquire whether such resolution has been passed in the manner directed by this section, and if satisfied that it has been so passed, he shall forthwith register the resolution and statement of assets and debts; but until such registration has taken place, such resolution shall be of no validity; and any creditor of the debtor may inspect such statement at prescribed times, and on payment of such fee, if any, as may be prescribed." |
| "The creditors may, by resolution passed in the manner and under the circumstances aforesaid, add to, or vary the provisions of, any composition previously accepted by them, without prejudice to any persons taking interests under such provisions who do not assent to such addition or variation. And any such additional resolution shall be presented to the court in the same manner, and proceeded with in the same way and with the same consequences, as the resolution by which the composition was accepted in the first instance." | "The creditors may, by an extraordinary resolution, add to or vary the provisions of any composition previously accepted by them, without prejudice to any persons taking interests under such provisions who do not assent to such addition or variation; and any such extraordinary resolution shall be presented to the registrar in the same manner and with the same consequences as the extraordinary resolution by which the composition was accepted in the first instance." |
| "The provisions of a composition accepted by such resolution in pursuance of this section shall be binding on all the creditors whose names and address- | "The provisions of a composition, accepted by an extraordinary resolution in pursuance of this section, shall be binding on all the creditors whose names and |

es, and the amounts of the debts due to whom, are shown in the statement of the debtor produced at the meeting at which the resolution shall have been passed, but shall not affect or prejudice the rights of any other creditors."

addresses, and the amount of the debts due to whom, are shown in the statement of the debtor produced to the MEETINGS at which the resolution has passed, but shall not affect or prejudice the rights of any other creditors."

"Where a debt arises on a bill of exchange or promissory note, if the debtor shall be ignorant of the holder of any such bill of exchange or promissory note, he shall be required to state the amount of such bill or note, the date on which it falls due, the names of the acceptor and of the person to whom it is payable, and any other particulars within his knowledge respecting the same; and the insertion of such particulars shall be deemed a sufficient description by the debtor in respect to such debt.

"Where a debt arises on a bill of exchange or promissory note, if the debtor is ignorant of the holder of any such bill of exchange or promissory note, he shall be required to state the amount of such bill or note, the date on which it falls due, the name of the acceptor or of person to whom it is payable, and any other particulars within his knowledge respecting the same; and the insertion of such particulars shall be deemed a sufficient description of the creditor of the debtor in respect of such debt, and any mistake made inadvertently by a debtor in a statement of his debts may be corrected after the prescribed notice has been given, with the consent of a general meeting of his creditors."

"Any mistake made inadvertently by a debtor in the statement of his debts may be corrected upon reasonable notice, and with the consent of a general meeting of his creditors."

(No similar provision.)

"Every such composition shall, subject to priorities declared in said act, provide for a *pro rata* payment or satisfaction, in money, to the creditors of such debtor, in proportion to the amount of th ir unsecured debts, or their debts in respect to which any such security shall have been duly surrendered and given up."

'The provisions of any composition made in pursuance of this section may be enforced by the court, on motion made in a summary manner by any person interested, and on reasonable notice; and any disobedience of the order of the court made on such motion shall be deemed to be a contempt of court."

"The provisions of any composition made in pursuance of this section may be enforced by the court, on a motion made in a summary manner by any person interested, and any disobedience of the order of the court made on such motion shall be deemed to be a contempt of court."

"Rules and regulations of court may be made in relation to proceedings of composition herein provided for in the same manner, and to the same extent as now provided by law in relation to proceedings in bankruptcy."

"Rules of court may be made in relation to proceedings on the occasion of the acceptance of a composition by an extraordinary resolution of creditors, in the same manner, and to the same extent and of the same authority, as in respect of proceedings in bankruptcy."

"If it shall at any time appear to the court, on notice, satisfactory evidence, and hearing, that a composition under this section cannot, in consequence of legal difficulties, or for any sufficient cause, proceed without injustice or undue delay to the creditors or to the debtor, the court may refuse to accept and confirm such composition, or may set the same aside; and in either case the debtor shall be proceeded with as a bankrupt, in conformity with the provisions of law, and proceedings may be had accordingly; *and the time during which such composition shall have been in force shall not, in such case, be computed in calculating periods of time prescribed by said act.*"

"If it appear to the court, on satisfactory evidence, that a composition under this section cannot, in consequence of legal difficulties, or for any sufficient cause, proceed without injustice, or undue delay to the creditors or to the debtor, the court may adjudge the debtor a bankrupt, and proceedings may be had accordingly."

A correct analysis of these statutes will show, as to the questions now before the court, the evident intent of the United States statute in changing the provisions of the borrowed British act. By the latter (British) act, two meetings of creditors are required, at each of which the debtor must appear, etc., and submit a statement of his assets, debts, etc. The United States statute, seemingly, provides that, instead of the debtor's appearance at a second meeting, with the production of his statement anew, a confirmation of the original resolution by the signatures thereto of the debtor and two-thirds in number and one-half in value of all his creditors shall be sufficient. At the first meeting the debtor must appear, make his statement, etc., the resolution to be passed by a majority in number and three-fourths in value of the creditors assembled, due notice to each creditor having been given as required by the act, which resolution must be confirmed (when?) by the signatures of two-thirds in number and one-half in value of all the creditors. The British act requiring two meetings, makes it necessary that at the first meeting a majority in number and three-fourths in value of those assembled shall assent, and so does the United States statute. The British statute calls for a second general meeting of creditors, after due notice, at which second general meeting the confirmation must be voted for by a majority in number and value of the creditors assembled. The distinction is apparent. Under the United States statute, as also under the British, the vote of a majority in number and three-fourths in value of creditors assembled, is necessary to pass the composition resolution at the first meeting.

At the second meeting, for which the British statute provides (to be held on full notice, etc.), a majority in number and value of creditors assembled decide for confirmation. Not so under the United States statute; for it requires two-thirds in number and one-half in value of all the creditors of the debtor to confirm the composition resolution by their signatures. Why this change? Was it not the design of the United States statute to obviate the necessity and expense of the second meeting of creditors as required by the British statute, and to substitute therefor the signatures of the creditors, requiring, however, two-thirds of all the creditors, instead of those assembled? The important differences are that, under the British statute, a second meeting of creditors is required, at which a majority in number and value of those assembled can confirm; while under the United States statute, there is no second meeting of creditors to formally pass upon the confirmation. The United States statute says the resolution passed at the first meeting shall be confirmed, not by a majority in number and value of those assembled at the second meeting, but by the signatures of two-thirds in number and one-half in value

of all the creditors. Hence, under the British statute, the creditors have two meetings, at each of which the debtor must appear with his statements; and the creditors must decide at the first meeting, by a majority in number and three-fourths in value, and at the second meeting by a majority in number and value of the creditors assembled. But by the United States statute, the same number is required for the first meeting; but instead of a second meeting, where, as under the British statute, a majority in number and value of those assembled would prevail, a confirmation by signatures is required of two-thirds in number and one-half in value of all the creditors of the debtor.

This absence of a second meeting, with its attendant costs and possible delay, is compensated under the United States statute by the fact that the signatures of two-thirds of all the creditors, instead of a mere majority of those assembled, together with a half in value, are requisite. Still, the United States statute provides that, after the first meeting, notice shall be given to all the creditors, and a hearing be had whether the composition resolution was duly passed, and that the court, if satisfied that it was so passed, and that the same is for the best interest of all concerned, cause the same to be recorded, whereby the composition becomes effective. Was this notice to the creditors for the said hearing to take the place of the second meeting under the British statute, or was the confirmation by signatures to have that effect? If the latter, why notify creditors of this hearing? The court can ordinarily determine by the record whether the resolution was duly passed, if the creditors have not, as under the British statute, a second vote upon the proposition. Why, then, the notice to the creditors of this hearing? Obviously, that they may be present and submit any objection they may have as to the validity of the first meeting and what was done thereat, and also show what they deem the best interest of all concerned may require. Unless this is the purpose of the notice, no reason therefor appears.

It is, therefore, ruled as to many of the exceptions filed, based on the theory that, as under the British statute, a second meeting of creditors is necessary to be held to confirm the original resolution, that no such second meeting, as such, is necessary. It is also ruled that at the hearing, of which creditors are to have the required notice, objections can be presented as to the due passage of the original resolution as to the confirmatory signatures, and as to what is for the best interest of all concerned. In this view the court has heretofore given several orders in this case, some of which, for lack of precision, have caused embarrassment.

At the hearing, for which due notice was given, none but unsecured creditors should have been heard. It may be a question whether a secured creditor, who does not release his security, at or before the first meeting, can have any status at the subsequent hearing by then releasing for the purposes of opposition. In this case he was permitted to do so, and although no exceptions thereto are filed, yet the court does not wish it to be considered that such a right exists. Parties ought to elect at a proper time what to do, where the right of election exists, and not speculate upon the chances of litigation. The court, however, did permit the parties having attachment, on releasing the same, to appear and contest at the hearing. From the insufficiency of the order entered, requiring an investigation as to the signatures confirmatory of the resolution, and also as to what the best interest of all concerned demands, much of the doubt and difficulty in this case has arisen.

At the hearing, on notice to the creditors, many have appeared, and object: First. As to several matters connected with the adoption of the resolution and confirmatory signatures. Second. As to what may be for the best interest of all concerned. Under this objection it must not be supposed that they are at liberty to defeat the proposed composition against the wishes of the creditors generally, because, if defeated, some peculiar benefit may accrue to the objectors, who are in a minority. The design of the statute is to give the required number the control of the proposition, which, if passed as the law exists, ought to be recorded and become operative, unless such facts are brought to the knowledge of the court as demonstrate that the resolution passed and confirmed is not for the best interest of all concerned. It will be seen that, by the British statute, the registrar records the resolution after the second meeting, if the proceedings to that stage have conformed to the law. It is twice stated in the United States statute, on the other hand, when the court may interpose to prevent or set aside the composition. Again, this marked difference is observable, viz.: Under the British statute the required votes are those of the creditors assembled at both meetings; but under the United States statute it is the required votes of those assembled at the first meeting, and confirmed by the required signatures of all the creditors.

This distinction between the two acts indicates that under the United States statute, only one meeting of creditors, as such, is to be held, and that, instead of the second meeting required by the British statute, the confirmatory signatures shall be sufficient. Some of the English cases cited evidently rest on this difference. Where a majority assembled are to decide, it is imperative that all should have had notice of the meeting; but where the composition cannot be effective without the confirmation of all creditors, whether present at a meeting or not, a safeguard exists independent of formal notice. Ex parte Sidey, 24 Law T. (N. S.) 401; Ex parte Rogers, 22 Law T. (N. S.) 283.

Without entering more at large into the differences between the two statutes, and the reasons therefor, it must suffice to state, succinctly, the rulings of this court on the various propositions submitted.

First. Notice to the creditors having been given, the required number of unsecured creditors assembled at the first meeting called, could pass the resolution. If a fully secured creditor wishes then to vote or interfere, he must first relinquish his security. At that meeting the debtor must appear in person, or by a representative, and submit the statement required. As no other formal meeting of the creditors is required, he is not bound to appear at the hearing, to submit anew the statement previously made by him, or any other statements.

Second. The resolution purporting to have been previously passed, together with the debtor's statement as required, having been presented to the court, a hearing is to be ordered on notice to the creditors; at which hearing it must be decided whether such resolution was duly passed, etc. If it be held that the resolution was duly passed, and the needed confirmatory signatures had, the next step is to satisfy the court that the terms offered, etc., are for the best interest of all concerned. At this point it should be noted that more than the formal passage of the resolution at the previous meeting is necessary to make the same operative, viz., the required confirmatory signatures.

But when are those signatures to be had? The resolution is to be first passed by a majority in number and three-fourths in value of the creditors assembled, and confirmed by the signatures of the debtor and two-thirds in number and one-half in value of all the creditors, whether present or absent. It is obvious that the statute does not contemplate that the confirmatory signatures shall necessarily be attached to the resolution at no other time than at the first meeting: for, if a majority in number and three-fourths in value of those assembled vote for the resolution, it has passed. To that resolution, as thus passed, confirmatory signatures of a very different number of creditors are necessary, who are not necessarily present and voting at that meeting.

Third. After due notice for the hearing, the court must ascertain, therefore, not only whether the resolution was formally passed, but also whether the confirmatory signatures required have been secured. Those signatures may, or may not, be attached to the resolution at the prior meeting; but they must have been attached before the hearing, or be attached at the hearing. The confirmatory signatures are essential to make the resolution operative.

Fourth. A meeting for the purpose of adding to or varying the original proposition, the statute contemplates, is one to follow the recording, etc., of the former resolution. Such are the requirements of the British statute, and such is the evident intent of the United States statute. Each statute proceeds, as to that provision, upon the theory that a composition has previously been duly confirmed and recorded. From some cause, subsequently occurring or discovered, the creditors may compel a new meeting to be held, following, however, all the modes of proceeding exacted with regard to the original resolution and proposition. While this is true, this court is not prepared to say that, if after the first meeting the debtors agree to enlarge their offer, the creditors ought to be precluded from having the benefit thereof, without being driven to the necessity of a new meeting and hearing, with confirmatory signatures, etc.; thereby adding costs and expenses, to the injury of creditors, it may be, and of the debtors. Still, the technical difficulty, urged by counsel, remains, viz.: that as the hearing is only for the purposes mentioned concerning the original proposition, how can the court consider entirely new and independent propositions at the instance of the debtor or of any creditor? On the other hand, if the required number passed the original resolution and the required signatures confirmatory had been attached, so that no objection thereto could be sustained, and the court had advanced to the second stage of inquiry, viz.: whether the terms agreed upon were for the best interests of all concerned, should it refuse to give to the creditors the proffered benefit of the increased sum? Under the British statute the third meeting, to add or to vary, occurs when from subsequent events the debtor becomes unable to comply with the original terms. No instance is known where such a meeting was needed or held to enable the creditors, already bound to a smaller sum, to agree to receive more than the law had awarded, with their consent, in the absence of fraud.

If, however, the needed inquiries at the hearing disclose that there were concealed assets, or that the original terms were not for the best interest of all concerned, should the debtor, by advancing the terms, drive the court into a new inquiry, viz.: whether some new proposition, instead of the first, would not satisfy the court as to what the interest of all concerned might require under the changed phase of the case? If this is permissible, would not these proceedings be extended indefinitely, compelling the court, when the debtor thus confesses that he could and ought to do better than he proposed, to enter upon a new inquiry with not only suspicion aroused, but with a confessed fact before it, that the debtor had not acted fairly towards his creditors? It is held, therefore, that the proposed advance in the percentage is only demonstrative of the fact that the original proposition, whether confirmed or not by the needed signatures, is not for the best interest of the creditors.

It may be important, however, as doubts

exist with respect to former rulings of this court in some particulars, and as the questions arise on the face of the register's report, with exceptions thereto, that decisions thereon should be made. As to these subsidiary propositions, the court holds:

First. That when proceedings are commenced, voluntarily or involuntarily, and a list of creditors is presented, it is not to be taken for granted that each creditor thus named is really what the debtor in his schedule chooses to state. None but bona fide creditors are to have a voice in the composition proceedings, and the simple fact that the debtor chooses to place them on his list, does not, even prima facie, establish that they are creditors. On the other hand, when involuntary proceedings are instituted, and the court has held that the moving creditors are such for initiating the proceedings, they are to be considered such at composition meetings without further proof. If any one desires to go behind that action of the court, he must do so by instituting proper proceedings therefor. It must suffice for the register that such creditors have had their demands passed upon by the court, and he must take notice thereof. The register is an officer of this court, and as such he cannot act independently of its judgments or decrees, but must take notice of them. Were this not so, there would be an independent court held by the register, to whom the United States district court must certify its action, under all the solemnities of certificates, to the great expense, delay, and annoyance of those whose demands have already been passed upon by the judge. This would involve the folly of having a register review the action of the judge, when the register's action the judge has to pass upon finally. It has been urged that as the debtor is, in either a voluntary or an involuntary case, to furnish a list of his creditors, those named by him have a right to appear at the composition meeting without proof, and to be recognized as such creditors for the sum named. Such is not the law. If a debtor can furnish an unscrutinized list, which must be received as correct without proof, then it would be within the power of any debtor to defeat the main purposes of the bankrupt act. Every one who claims to be a creditor must establish his claim. If his claim as such creditor has already been established by the court, so as to permit him to move in involuntary proceedings, he is decided to be a creditor. The rule, therefore, is this: that in involuntary proceedings, the petitioning creditors, on whose motion an order to show cause has been issued, are not bound to prove anew, and in another and more formal manner, that they are such creditors, at a meeting for composition. All other creditors must prove themselves to be such in the formal manner required by the statute and general orders in bankruptcy.

Second. It has heretofore been ruled that, when an attorney, duly admitted to practice in this court, appears before the register to represent a person in interest, he is to be accepted as such attorney, unless some one puts him to proof, by a rule therefor, to show his authority. All others must show formal powers of attorney as prescribed by law and general orders in bankruptcy.

Third. A more difficult proposition arises. as presented in this case, when a duly authorized attorney appears before the register and offers to vote under a power previously given, but at the same time another person, claiming to be an attorney, also appears, and produces a telegram just received from the principal, revoking the former power, and requesting the last named to act. In such cases it may be well for the register, in his discretion, to defer action until it is ascertained, without unnecessary delay, whether the revocation and new appointment have actually been made. It is obvious that such dilatory matters, through erroneous statements, may be started at the last moment to the serious injury of others. While such telegrams should be treated with extreme caution, and not received as authoritative, yet. it would not be objectionable for the register to suspend action, if in his discretion the facts justified, until within due time he could have presented to him the proofs of revocation and of a new appointment. Such cases cannot be subjected to any fixed rules; for they are suspicious in all instances growing out of supposed laches.

Fourth. It is objected that some individual assets were omitted in the statement at the first meeting, and consequently all done thereat was void. The act provides for the correction of any inadvertent mistake as to debts; but nothing is, in terms, stated concerning errors as to assets. Under the British statute, where two successive meetings have to be held, at each of which a statement by the debtor has to be made, it has been held (quære?) that a failure to make a full and accurate statement, or a failure to disclose all the creditors, would render the meetings void. But the United States statute subjects all of these proceedings to the investigation of the court. It is for the court to decide, in the light of the facts, upon the alleged concealment of assets, and upon the failure to name all of the creditors. This is the more obvious from the fact that the composition, if recorded, does not bind any creditor whose name does not appear in the debtor's statement. .

There are many specific objections made as to receiving or rejecting votes at the last meeting or hearing, which, if the parties desire, will be passed upon seriatim. All of those objections are supposed to be covered by the rules now stated. While creditors, duly shown to be such, should have the amplest opportunity, consistent with legal rules, to determine their line of action at each

stage of the case, they must be held to the proper measure of diligence. Whether acting in person, or by proxy, they should reach a conclusion at the proper time, and not delay or embarrass proceedings by shifting their course after action had, or by changing proxies while final action is about to occur at the hearing ordered. Neither the register nor the judge should, at such a time, be asked to delay the hearing, to the annoyance of all present, in order to embark upon a new inquiry as to the changing views of the respective creditors concerning their proxies, etc. It is the duty of all to be at the hearing, prepared to act. If the provisions of the bankrupt act are to be so administered as to promote dilatory motions, its beneficence will disappear. Both debtor and creditor may be otherwise devoured at the will or caprice of one or more creditors, or at the shifting caprices of a debtor. It is the duty of those intrusted with the administration of the bankrupt act to protect the interests of all concerned, and not suffer needless expense and delays. The very object of a composition may be defeated, if one or more factious creditors can defeat the wishes of others; yet a reasonable time should be given for investigation, and for the correction of formal errors.